# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: August 24, 2026

| | | |
|---|---|---|
| VACONDA KING-CAMBOR, Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | * | No. 25-482V<br>Special Master Nora Beth Dorsey<br>Dismissal Decision; Failure to Prosecute; Insufficient Proof; Entitlement. |

Vaconda King-Cambor, pro se, Kennesaw, GA.
Katherine Edwards, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION**[1]

On March 17, 2025, Vaconda King-Cambor ("Petitioner") filed a pro se petition for compensation in the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged influenza ("flu") vaccines she received on November 2, 2022, and on December 6, 2023, caused her to suffer "constant headaches, nose bleeds, imbalance, dizzy

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

spells, knee and ankle injury, and respiratory issues." Petition at Preamble, ¶ 1 (ECF No. 1).

Based on the reasons set forth below and in the Order to Show Cause dated February 3, 2026, the undersigned **DISMISSES** this case for failure to prosecute and insufficient proof.

## I. BACKGROUND

### A. Procedural History

On March 17, 2025, Petitioner filed a petition and accompanying medical records. Petition; ECF No. 1-2.[3] The case was assigned to the undersigned. Notice of Assignment dated Mar. 17, 2025 (ECF No. 5).

An Initial Order was issued March 18, 2026. Order dated Mar. 18, 2026 (ECF No. 6). The undersigned granted Petitioner's motion for leave to proceed in forma pauperis. Id. at 2. She also explained that Petitioner needed to file medical records for the three years prior to the vaccines at issues. Id. at 1. Petitioner was directed to file all medical records from November 2019 to present, or a status report indicating all records had been filed, by May 19, 2025. Id. at 1.

Petitioner failed to file either medical records or a status report by the May 19, 2025 deadline. The undersigned reiterated the need for these medical records and set a new deadline of June 30, 2025. Order dated May 29, 2025 (ECF No. 9).

On June 16, 2026, Petitioner filed a statement of completion along with medical records. ECF No. 10. Thereafter, Respondent was instructed to file either a Rule 4(c) report or responsive pleadings. Order dated June 16, 2025 (ECF No. 11).

On August 14, 2025, Respondent filed his Rule 4(c) report. Respondent's Report ("Resp. Rept."), filed Apr. 23, 2024 (ECF No. 12). Respondent argued that the case was not appropriate for compensation. Id. at 1. First, Respondent argued that Petitioner has not offered "a reputable scientific or medical theory establishing that the flu vaccine can cause her alleged injuries." Id. at 5. Further, Petitioner had not offered an expert report and "the statements made by her medical providers do not satisfy [P]etitioner's burden." Id. at 6. Additionally, Respondent contended that while Petitioner had provided evidence of a knee and ankle injury in November 2024, there was no other diagnosis or injury to support Petitioner's claimed injuries. Id. Finally, Respondent identified and requested missing medical records. Id. at 2 nn.3-4, 3 n.5, 4 n.6.

Petitioner was directed to file the record identified in the Rule 4(c) report by October 6, 2025. Order dated Aug. 20, 2025 (ECF No. 13).

---

[3] The undersigned will refer to all medical records filed by Petitioner by CM/ECF docket number and pdf page number.

On October 2, 2025, Petitioner filed additional medical records and a response to Respondent's report. ECF No. 14; Petitioner's Response to Resp. Rept. ("Pet. Response"), filed Oct. 2, 2025 (ECF No. 15). In her response, Petitioner argued "[e]ven in the absence of an expert opinion at this stage, the totality of the evidence supports a finding of causation under the liberal evidentiary standards applied in [Vaccine Act] proceedings." Pet. Response at 3. Petitioner requested the undersigned find that she met her burden under Althen v. Secretary of Health & Human Services, 418 F.3d 1274, 1280 (Fed. Cir. 2005) and award full and fair compensation. Id. at 4.

The undersigned issued an Order explaining Petitioner's response was not sufficient to establish compensation. Order dated Oct. 6, 2025 (ECF No. 16). She explained that Petitioner must provide a sound and reliable medical or scientific explanation that pertains specifically to her case. Id. at 1 (citing Knudsen v. Sec'y of Health & Hum. Servs., 35 F.3d. 543, 548-49 (Fed. Cir. 1994)). Moreover, Petitioner could not establish entitlement to compensation based solely on her assertions; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. Id. at 1 (citing § 13(a)(1)). Thus, to procced with her claim, Petitioner needed to "obtain a medical expert to provide a report (1) identifying the alleged vaccine-related injury, (2) addressing all three Althen prongs, and (3) addressing the issues raised in Respondent's Rule 4(c) report." Id. at 2. Petitioner was warned that without an expert report in this case, she could not satisfy burden of proof and, therefore, could not establish she was entitled to compensation. Id. Petitioner was directed to file an expert report by December 5, 2025. Id.

On November 25, 2025, Petitioner filed a "notice to continue proceedings under the vaccine act and supplemental statement of facts supporting causation" and a "motion for reconsideration and opposition to order requiring expert report." Petitioner's Notice to Continue Proceedings Under the Vaccine Act and Supplemental Statement of Facts Supporting Causation ("Pet. Statement"), filed Nov. 25, 2025 (ECF No. 18); Petitioner's Motion for Reconsideration and Opposition to Order Requiring Expert Report ("Pet. Mot."), filed Nov. 25, 2026 (ECF No 19). Petitioner maintained she had met her burden of proof under Althen "without further requirement for an expert witness." Pet. Statement at 3. Petitioner submitted "the existing medical evidence already satisfies the evidentiary requirement set forth in [Althen], and that requiring an expert report would impose an unnecessary burden inconsistent with the purpose of the Vaccine Act." Pet. Mot. at 1. Specifically, Petitioner asked the Court to reconsider the expert report deadline and asserted "the existing contemporaneous medical records and treating physician statements sufficiently establish the elements of causation-in-fact required under Althen." Id. at 2.

The undersigned denied Petitioner's motion. Order Denying Motion for Reconsideration dated Nov. 25, 2025 (ECF No. 20). The undersigned again explained that to receive compensation a petitioner must provide "a sound and reliable medical or scientific explanation that pertains specifically to her case." Id. at 2. The undersigned again noted that Petitioner's own statements and the filed medical records were insufficient to establish entitlement. Id. The undersigned again advised Petitioner she would be unable to satisfy her burden of proof without an expert report. Id. Petitioner was directed to file an expert report by January 6, 2025. Id.

Alternatively, Petitioner could file a motion for a ruling on the record if Petitioner did not wish to file an expert report and wished to submit her case for adjudication on the current record. Id.

Petitioner did not file an expert report or motion for ruling on the record by the court-imposed deadline.

On February 3, 2026, the undersigned issued an Order to Show Cause. Order to Show Cause dated Feb. 3, 2026 (ECF No. 21). The undersigned again explained that without an expert report Petitioner could not satisfy her burden of proof and therefore, could not establish she is entitled to compensation. Id. at 2. Petitioner was also advised that the failure to follow court orders and the failure to file requested documents would result in the dismissal of Petitioner's claim. Id. at 2-3. Petitioner was ordered to show cause why her case should not be dismissed by filing an expert report no later than Monday, April 6, 2026.[4]

Petitioner failed to file an expert report, or any other response, by the April 6, 2026 deadline.

This matter is now ripe for adjudication.

### B. Petitioner's Statements

Petitioner provided a brief medical history in her petition and in her supplemental statement of facts. See Petition at ¶¶ 1-7; Pet. Statement at 1-2.

Petitioner averred she received a flu vaccine on November 2, 2022. Petition at ¶ 1; Pet. Statement at 1. Petitioner stated on July 10, 2023, she "fell at a public restroom and sustained a knee injury a few months after receiving the initial vaccination." Petition at ¶ 3. She claimed she was diagnosed with COVID-19 on October 13, 2023. Pet. Statement at 2. She alleged on November 3, 2023, she "lost her balance and fell down the stairs due to dizziness and weakness" Petition at ¶ 4.

Next, Petitioner explained that, on March 18, 2024, she called her cardiologist Dr. Barry Mangel with complaints of chest pain and headaches, and she was told to come in for screening and chest X-ray. Petition at ¶ 5. On July 17, 2024, She was seen by Dr. Mangel, and underwent an exercise stress test and echocardiogram ("EKG"). Id. at ¶ 6. Petitioner stated that Dr. Mangel determined her EKG was abnormal. Id.

On January 22, 2025, Petitioner was seen by her primary care physician, Dr. Julia Cartwright. Petition at ¶ 7. Petitioner asserted she "informed the doctor of her ongoing symptoms, headaches, nosebleeds and dizziness." Id. Finally, on March 12, 2025, Petitioner

---

[4] Petitioner was also advised she could file a motion for extension of time if additional time was needed. Order to Show Cause at 2 n.1. Further, Petitioner could file a motion for a ruling on the record if she did not wish to file an expert report and instead wished to submit her case for adjudication. Id.

was seen by an otolaryngologist for "recurrent nosebleeds and sinus irritation." Pet. Statement at 2. Petitioner claimed that the otolaryngologist "attributed [her symptoms] to complications following the COVID-related condition and after receiving the Flu Vaccination." Id.

### C. Summary of the Medical Records[5]

On November 2, 2022, Petitioner received a flu vaccine at WellStar Health System. ECF No. 10 at 16.

On November 18, 2022, Petitioner went to an Urgent Care due to experiencing cough and congestions symptoms. ECF No. 10 at 52. After testing, Petitioner was negative for COVID-19, influenza A and B, and respiratory syncytial virus ("RSV"). ECF No. 14 at 21.

On January 24, 2023, Petitioner was seen by gynecologist Audrey Marsidi, M.D., regarding Petitioner's fertility testing and next steps. ECF No. 10 at 48. Petitioner's review of symptoms was negative for migraine headaches. Id. at 49. Petitioner also had an outpatient visit on March 31, 2023, in relation to her fallopian tube disorder and for fertility planning. Id. at 37.

On July 10, 2023, eight months post-vaccination, Petitioner asserted she "fell at a public restroom and sustained a knee injury a few months after receiving the initial vaccination." Petition at ¶ 3. However, there are no medical records related to this incident. See, e.g., ECF No. 10 at 52-54.

On November 3, 2023, one year post-vaccination, Petitioner presented to the Emergency Department due to complaints of right ankle pain. ECF No. 10 at 31. Petitioner stated she fell down the stairs on the right side and twisted her ankle that day. Id. at 34. Petitioner stated it had been too painful to bear weight since that time. Id. Subsequent X-rays were negative, and Petitioner was diagnosed with a right ankle sprain and prescribed Tramadol. Id.

On November 14, 2023, Petitioner presented for an initial physical therapy ("PT") evaluation due to her ankle pain and right knee contusion. ECF No. 10 at 46. Petitioner had another PT session the next day. Id. Petitioner was described as "progressing with rehab as expected at this juncture," and additional PT was recommended. Id. at 44.

On December 6, 2023, Petitioner received a flu vaccine in her left deltoid at CVS pharmacy. ECF No. 10 at 15; see also ECF No. 1-2 at 2-3.

On April 10, 2024, Petitioner presented to cardiologist Barry Mangel, M.D., for an initial cardiac evaluation. ECF No. 10 at 25. Under History of Present Illness, Petitioner was noted as having recently been seen at an Urgent Care, in March of 2024, for evaluation of chest

[5] This medical history is largely taken from Respondent's Rule 4(c) report as the undersigned finds the Rule 4(c) report provided an accurate representation of the records. See Resp. Rept. at 2-4.

discomfort.[6] Id. Dr. Mangel concluded, based on both Petitioner's EKG from Urgent Care and an EKG taken April 10, 2024, that Petitioner had a 1st degree AV block and had a normal sinus rhythm. Id. at 27. He reassured petitioner that this finding was not unusual given her history of regular physical activity. Id. He recommended a stress EKG for further evaluation. Id.

On June 27, 2024, Petitioner underwent an exercise stress test. ECF No. 10 at 22-23. Petitioner experienced non-limiting angina during the stress test but otherwise did not mention any other symptoms during the test. Id. The stress test was negative for ischemia. Id.

On July 1, 2024, Petitioner spoke with Nurse Practitioner Teri French-Mirtschink and provided an update from her previous EKG and treadmill test. ECF No. 10 at 30. NP French-Mirtschink noted Petitioner said she had tightness and heaviness in the chest during her exercise portion, towards the end of the session. Id. NP French-Mirtschink decided to move forward with a coronary computed tomography angiography of the coronary arteries with fractional flow reserve, due to Petitioner's continued symptoms. Id.

On January 15, 2025, Petitioner presented to general practitioner Julia Cartwright, M.D., for an annual physical. ECF No. 10 at 17-21. Petitioner was a new patient to this practice. Id. at 17. Dr. Cartwright noted Petitioner was followed by cardiology for a history of chest pain and abnormal EKG. Id. at 17. Her review of symptoms was negative for chest pain and palpitations. Id. at 18. Additionally, Petitioner was negative for dizziness, weakness, light-headedness, numbness and headaches. Id. On examination, she had normal heartrate and regular rhythm with no murmur heard. Id. at 19.

On March 12, 2025, Petitioner was seen by otolaryngologist Ashlie Darr, M.D., due to recurring right sided nose bleeds which began one year prior and Petitioner attributed to "trauma from nasal swab during Covid testing." ECF No. 14 at 7; see also ECF No. 10 at 7. Dr. Darr prescribed a topical ointment and advised Petitioner to follow up if symptoms recurred. ECF No. 14 at 7. There is no reference to the November 2, 2022 or December 6, 2023 flu vaccines in this record. See id.

No subsequent medical records were filed.

## II. DISCUSSION

When a petitioner fails to comply with court orders to prosecute her case, the court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

[6] Records from the March 2024 Urgent Care visit were not filed.

Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause include but are not limited to: Byrd v. Sec'y of Health & Hum. Servs., 778 F. App'x 924 (Fed. Cir. 2019); Ghasemipor v. Sec'y of Health & Hum. Servs., No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); Flores v. Sec'y of Health & Hum. Servs., No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Button ex rel. W.S.B. v. Sec'y of Health & Hum. Servs., No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017); Duncan v. Sec'y of Health & Hum. Servs., No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), mot. for rev. denied, 153 Fed. Cl. 642 (2021).

Here, Petitioner failed to file an expert report or any other response to the undersigned's February 3, 2026 Order to Show Cause. Thus, the undersigned finds it appropriate to dismiss the case for failure to prosecute and insufficient proof of causation.

Moreover, to receive compensation under the Act, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of his vaccinations, or (2) that she suffered an injury that was actually caused by a vaccine. See §§ 11(c)(1), 13(a)(1)(A); Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1319-20 (Fed. Cir. 2006). Petitioner must show that the vaccine was "not only a but-for cause of the injury but also a substantial factor in bringing about the injury." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1321 (Fed. Cir. 2010) (quoting Shyface v. Sec'y of Health & Hum. Servs., 165 F.3d 1344, 1352-53 (Fed. Cir. 1999)).

Because Petitioner does not allege she suffered a Table Injury, and the facts do not support a Table Injury, she must prove a vaccine she received caused her injury. To do so, Petitioner must establish, by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen, 418 F.3d at 1278.

Petitioner must provide a sound and reliable medical or scientific explanation that pertains specifically to her case, although the explanation need only be "legally probable, not medically or scientifically certain." Knudsen, 35 F.3d. at 548-49. Petitioner cannot establish entitlement to compensation based solely on her assertions or the records that have been filed herein; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. § 13(a)(1). In determining whether Petitioner is entitled to compensation, the special master shall consider all material in the record, including "any . . . conclusion, [or] medical judgment . . . which is contained in the record regarding . . . causation." § 13(b)(1)(A).

In this case, the medical records are insufficient to establish entitlement to compensation. Petitioner asserts that her otolaryngologist "attributed [her symptoms] to complications following the COVID-related condition and after receiving the Flu Vaccination." Pet. Statement at 2. However, medical records from Petitioner's March 12, 2025 otolaryngology visit do not discuss the flu vaccine at issue and her otolaryngologist provides no opinions regarding the etiology of her symptoms. See ECF No. 14 at 7.

Further, the medical records do not include any statement that could be interpreted as a medical theory as to how the flu vaccines could cause Petitioner's headaches, nose bleeds, imbalance, dizzy spells, knee and ankle injury, respiratory issues, or cardiological issues. Nor do Petitioner's treating physicians offer any opinions as to a medical theory to explain how the flu vaccines could cause these Petitioner's alleged injuries. Thus, an expert report is necessary for Petitioner to establish causation. However, despite multiple opportunities, Petitioner did not file an expert report in support of her claim. Accordingly, Petitioner has not provided preponderant evidence of causation, and her claim must be dismissed.

## III. CONCLUSION

The undersigned extends her sympathy to Petitioner for the pain and suffering she has experienced. The undersigned's Decision, however, cannot be decided based upon sympathy, but rather on the evidence and law.

Accordingly, this case is **DISMISSED** for failure to prosecute and insufficient proof. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master